*CHAUNCEY H. ANDREWS v. WILLIAM WATSON.

1. AUCTION SALE—EVIDENCE OF CONVERSATIONS.

In an action to recover damages for failure to accept and pay for certain shares of stock sold at auction, the seller claiming that forty shares were sold and the purchaser claiming to have bought only ten shares, evidence of directions given by the seller to the auctioneer as to the sale of the stocks incompetent unless it appears that such directions were given in the presient and hearing of the purchaser.

2. NOTICE OF SALE—PAROL EVIDENCE.

Parol evidence as to the contents of a notice of property to be sold at auction is inadmissible unless it appears that the notice itself is not available.

3. DEPOSITION MAY BE USED BY EITHER PARTY.

A deposition taken by one party may be used by either party in the trial of fact and where it is against the party in whose behalf it was taken and he refuses to use it, any other party may use it, in the examination in chief or in cross-examination.

4. MEASURE OF DAMAGES.

The measure of damages, in an action to recover for the refusal of the purchaser of certain shares of stock to pay for the same, where there was no delivery of the stock or transfer on the books of the corporation by delivery of the certificate thereof, or tender made prior to the commencement of the action, is the difference between the contract price and the market value of the same, and not the sum stipulated to be paid for the stock.

---

*For subsequent decision in this case, see *post* 692.

5. TRANSFER OF STOCK.

> The legal title to stock must be transferred on the books or by assignment of certificate, although the equitable title may be otherwise transferred.

6. PETITION—ALLEGATIONS TO SHOW SALE.

> A sale made by an auctioneer can be made as binding as any other contract, but to recover thereon it is essential that sufficient proof be offered to show that a bid was made and the property "knocked off" to the bidder, that the bid was accepted and the property sold. Therefore, a petition which does not allege a sale to the bidder and that the property was struck off to him, does not state sufficient facts upon which to predicate a judgment, and is clearly defective notwithstanding the liberal rule as to defective pleadings after judgment.

HEARD ON ERROR.

LAUBIE, J.

In the case of Chauncey H. Andrews against William Watson, the defendant in error brought his action in the court of common pleas, to recover the price of thirty shares of stock in the Mahoning and Shenango Valley Fair Association, a corporation, which he claims he sold at public auction to the plaintiff in error, at the price of $20 per share.

Inasmuch as it is said that the petition in this case is an admission, I will call attention to its allegations.

It is averred that about October 17, 1882, the plaintiff below was the owner of forty shares of stock in this corporation and that he had duly advertised, by hand bills posted throughout the neighborhood and in various papers in general circulation in Trumbull and Mahoning counties, that on said day he would sell at public vendue, stock and a variety of farm articles, and also a certain number of shares of stock of said association, to-wit, the number of forty shares. That on said day, at the time and place named therein, and as the last article of the sale, he put up, and caused to be cried by the auctioneer, ten shares of said stock with the privilege of more at the same bid, and thereupon came the defendant, Chauncey H. Andrews, who bid for said ten shares, the sum of $20 per share, and was then asked how many shares he would take, and replied that he would take all said forty shares. That, thereupon, said sale closed and within a short time thereafter, the plaintiff caused the shares to be transferred to said defendant, but the said defendant had instructed the secretary not to transfer the same to him, and did at that time refuse to accept the same and pay the price named, and has ever since refused to accept the same, and to pay the price bid therefor.

He further says that he has been ready, and is ready, and has been and is now willing to transfer these thirty shares of stock to the defendant in error, and that he refuses to accept the same and pay the price, and he asks damages in the sum of $600, the price of these thirty shares at $20 per share.

To this petition an answer was filed by the defendant below, in which he admits that he purchased ten shares of stock in this corporation, to be assigned to him, and which he paid for, and he denies all the other allegations of the petition.

He further says, that at the time he purchased the ten shares, he had no knowledge that plaintiff had any other shares of stock for sale, and whatever he said at the time of the sale was with reference to the ten shares offered by the auctioneer for sale, and that the plaintiff afterwards caused the ten shares to be conveyed to him. The plaintiff bid off for

the sum of $200 in full settlement for all claims which plaintiff had against him by reason of his buying this stock. The reply denies this new matter in the answer and this issue was submitted to the jury and verdict and judgment was rendered in favor of the plaintiff below and bill of exceptions was taken, embodying all the evidence in the case, and it is now sought to reverse that judgment for errors, it is claimed, appearing in the record.

It is assigned for error:

First. That the verdict is against the law and evidence, and that the court erred in refusing to charge as requested in the charge to the jury, and in admitting improper evidence. It is further stated, as I have said, that the petition does not state facts sufficient to constitute a cause of action and upon which a judgment could be predicated.

The first question which appears in this record, is whether the court admitted improper evidence upon the trial which was excepted to by the plaintiff in error. There are several items of evidence that were claimed to be incompetent and were admitted in the trial of the case, and among which is the testimony of the defendant in error as to the conversation between him and the auctioneer with reference to the sale of the stock, which it is claimed Andrews bid off. This consists in the directions that the defendant in error gave the auctioneer to sell the stock.

The witness said: P. H, Bean was the auctioneer of the sale, and John E. Gray was clerk. Mr. Andrews came there sometime during the sale of the cattle; did not see him bid off any cattle; there was a large crowd at the sale; I did not see Mr. Andrews to speak to him, but saw that he was there before the stock was offered for sale. After the last of the cattle were sold, I was standing some distance from the auctioneer; the auctioneer said to me "What else?" I said "Sell the fair stock."

The defendant at the time objected to the witness testifying to the conversation between himself and the auctioneer, and moved the court to withdraw the conversation between the witness and the auctioneer from the jury, and the court overruled the defendant's objection; motion refused to withdraw his testimony from the jury.

The defendant goes on and says the auctioneer said: "How shall I sell it?" I said: "Sell ten shares with the privilege of forty." The defendant moved to withdraw the foregoing testimony from the jury; motion overruled; exceptions taken.

The auctioneer then offered the ten shares of stock with privilege of forty, as it was understood; but I might say right there, there are a number of other witnesses who testified to this same conversation that occurred between the auctioneer and the defendant in error and what is understood by this conversation with the defendant, as applicable to this sale, but I will not occupy time to refer to this testimony.

Now, whether or not this testimony is competent will depend upon the fact as to whether the conversation occurred within the hearing of the plaintiff in error. The witness or party here does not state whether Andrews was present or not; he says that he had been there, that he had seen him there that morning before, but he would not say whether he was in hearing of that conversation or not, or in other words, it does not appear from his testimony that he was in hearing of this conversation, but there is testimony of a number of other witnesses here, that Andrews was in fact present; some say he was within fifty feet of the place when this,

conversation took place; others say sixty feet; some say as much as eighty feet, but whether he heard the conversation or not, was evidently a question for the court, because if all this conversation, important as it is, did occur in his absence, as between the plaintiff below and the auctioneer, it would not be competent ; whether Mr. Andrews was present and within hearing of this conversation was a question for the court, and the court must have found that he was within hearing, are from the testimony of the other witnesses as to the distance from him to the plaintiff and auctioneer, we are unable to say that the court should not have so found. That is, if he should have found that he was within hearing distance, then there is no error in admitting the testimony.

The next objection is that the plaintiff was admitted and allowed to read the testimony and deposition of Bean. It is not claimed that the deposition is incompetent except as to two questions, which were excluded when the deposition was read. It is hardly necessary to observe that any deposition taken by either party and filed in a case, can be used by either party in the trial, that is, in the trial of fact. Defendant refuses to use it, it being against him; any other person or party may use it and read it in the trial of the case, in the examination in chief as well as in the cross-examination.

It is claimed that the court erred in permitting the defendant in error, plaintiff below, to testify to the contents of the notice of time, place and property to be sold at the time of sale. This testimony was important, inasmuch as it was claimed that Andrews knew at the time he bid off the stock that forty shares were to be sold instead of ten shares, as he claims.

Now the plaintiff below testifies: "I had sold all my personal property on October 17, 1882, by public vendue. I had notices posted up in various parts of the county; these notices were printed in the office here in Youngstown, at the News-Register office; I have been to the News-Register office where they were printed to try and get a copy of the notices, and could not get one."

He also testifies that he had looked in his desk at home, where he was in the habit of keeping such things, and was unable to find one; that the bills were placed upon the fences and posts, and that an exact copy of the notice was in the bound files of the News-Register, which was upon the trial table.

And witness, being interrogated, said he was able to give the substance of the printed bill.

We are hardly able to see why it would be insisted upon to give the contents of this notice. There was one notice published, and copies afterwards published by the newspapers and posted in different parts of this county, and every one saw the notice of that sale, and it is hard to see the necessity of giving the contents of this notice, when the notice itself was put in. No proof had been offered that the notice could not be produced or that it was lost, or that any search had been made, and so forth, so that the contents of the notice could have been given in evidence, but on the contrary, no search had been made; plaintiff testified that he looked in his desk, and although the desk was the place where he was in the habit of keeping such things, there might have been some other place about his house. It is sufficient to say, that the notice was what should have been given in evidence; it was accessible

and it should have been given in evidence, and we think that the court in permitting the substance of this to be given was in error.

Whether there was error in the charge of the court. It has been held frequently and especially in Marietta & C. Ry. v. Strader, 29 Ohio St., 448, 451:

"But where the ground of error is the refusal of the court to grant a new trial, in a case where the verdict is alleged to be against the law or evidence, and a bill of exceptions is taken under the act of April 12, 1858, embodying the charge as well as all the evidence, the court, in determining whether a new trial ought to have been granted, will look to the charge in connection with the evidence, whether it was excepted to or not, with a view of determining, under all the facts and circumstances of the case, whether substantial justice has been done, or a new trial ought to be granted."

Now, upon examination of the charge, we find that the court charged the jury upon the theory that the action was to recover the price of this stock as alleged to have been bid off by Andrews at the time of the sale. He charged that the measure of damage in the case was the contract price for this stock. The testimony of this case shows there was no delivery of this stock there or transfer on the books of the corporation by delivery of certificate to Andrews. Neither is there any testimony to show that a tender was made prior to the commencement of this action. It is said a tender was made, certificate of stock was issued after the action was brought into court. The Statute, Sec. 3255, Rev. Stat., provides that shares of stock in any company shall be personal property, and when fully paid up, shall be subject to levy and sale upon the execution against the owner.

In Taylor on Corporations, 329, it is said that in the market shares of a corporation are held like any commercial paper or chattels and the certificates issued are evidence of ownership of shares and title, as representing the shares; hence, title of stock is passed by tender or delivery of the certificate. It is, therefore, apparent that stock is capable of delivery the same as other chattels.

Now, the case of Thompson v. Ledger, 12 Metcalf, 443, is an action brought to recover the price of railroad stock; the action was brought upon contract for the purchase of railroad stock by the purchaser. The purchaser paid part of the purchase price. It was held in that case, that the measure of damages was the contract price of the stock, but the court say, in delivering the opinion, "the further question was raised about the amount of damages given by the jury. The plaintiff contended, that the only measure of damages, was the sum stipulated to be paid for the stock; the defendant insisted that the measure of damages should be the difference between the market value of the stock, at the time he refused to take it, and the sum he agreed to pay therefor."

So the controversy there was the same as the controversy here. To present this question fully before the court, the jury were directed to assess damages in reference to each of these modes of computations, and they found that the damage would be the same in either case, finding the stock to be of no value at the time of the breach of the contract. Upon this last finding, a question was reserved as to its being a verdict against the weight of the evidence, and to be considered by the full court, if in their view it was material in the result. In the view we have taken of that finding, it is not material, as the plaintiff is entitled to recover the whole amount stipulated to be paid for the stock. The

Andrews v. Watson.

argument against such recovery is, that this stock was never accepted by the defendant; that this, at most, was a mere contract to purchase; and that the defendant, having repudiated it, is only liable to pay the difference between the agreed price and the market value of the stock on the day of delivery. Such would be the general rule as to the contracts for the sale of personal property, and such rule would do entire justice to the vendor. He would retain the property as fully in his hands as before, and a payment of the difference between the market price and the stipulated price would fully indemnify him. Such would have been the rule in this case, if nothing had been done to change the relation of the parties. If, for instance, the defendant had repudiated the contract, before any transfer of stock had been made to him on the books of the corporation, it might properly have applied here. But this is a case of somewhat peculiar character in this respect. The contract of the vendor to sell to the defendant one hundred and eighty shares of railroad stock required a previous transfer of the shares on the books of the corporation, and so forth.

I might say that the court put it upon that ground, that because the seller had transferred to the buyer of this stock on the books of the company, and the measure of damages was the contract price. There was nothing of that kind in this case. It is not claimed that there was any transfer of this stock upon the books of the company or corporation. Neither is it claimed that there is any tender of certificates of stock, and there are only two ways by which legal title to stock can be transferred. An equitable title can be transferred, perhaps, in another way. The legal title to stock must be transferred on the books or by assignment of certificate. There was no certificate issued to Watson until after the commencement of this action and none transferred to Andrews.

Now then, in Nixon v. Nixon, 21 Ohio St., 114, an action was brought upon a contract for the sale of a lot of hogs, and dispute arose as to the delivery, and tender was made of the hogs, as it was claimed by the seller, and the purchaser refused to comply with the contract.

The court in that case say: "Although the tender had been made, the contract in that case is executory; and the general rule of damages is the difference between the contract price of the hogs and the market value at the time and place specified for delivery. * * * The breach of the agreement by the defendant consisted of his refusal to accept the property tendered. If he had performed his part of the agreement, he would have accepted the property and paid the agreed price. We see no good reason why he should be placed in a better position by his refusal to perform than he would have occupied if he had performed his agreement."

The same in Cullen v. Bimm, 37 Ohio St., 236: "If a vendee refuse to accept personal property tendered in accordance with the terms of the contract of sale, he is liable in damages for the difference between the contract price and its market value; and the fact that the vendor, against the objection of the vendee, made an invalid sale of the property to himself, and thereafter treated it as his own, does not change the rule, nor defeat the action, where the same is brought to recover damages for non-acceptance of the property by the vendee."

It is true this action was brought before this contract, but it appears there was no delivery, and we think the measure of damages was between the contract price and what the stock was worth. I might cite a number of authorities but we do not think it is necessary.

The same rule is held in Sutherland on Damages, and Woods—Mayne on Damages, and a number of others to which we have referred, and we think in this there was error, in the court charging the jury, that the measure of damages here was the contract price of the stock. We think it is erroneous as it is not claimed any delivery was made, that the parties in any way changed their relations to this transaction after the purchase down to the time of the commencement of this suit. The proof does show that the defendant exercised ownership over this identical stock after this suit was begun. October 11, after this suit was begun, he signed the agreement of the president and directors of this company in which he agreed to an assessment upon thirty shares of stock —the same stock he is suing here for fifty per cent.

Now is this petition defective? That a binding contract may be made is hardly necessary to say, where the sale is made by an auctioneer, as well as in any other way, but in this case, in the case where a sale is made by an auctioneer, there should be enough evidence offered to show a bid was made and the property was "knocked off," as it is commonly termed, to the bidder; that is, that the bid was accepted and the property sold. Now this petition does not show that. The petition says: "Chauncey H. Andrews, the defendant, who bid for ten shares the sum of $20.00 per share and was then asked, how many shares he would take, and he replied to the auctioneer who was selling said stock, and to the plaintiff who asked him how many shares he would take, replied that he would take all of said forty shares." That is all there is of it. It does not say the sale was made to him. It does not say the property was struck off to him or the sale was in fact made. It says he was asked how many shares he would take and that he said he would take all of them.

It is said in argument this would cover that, "that thereupon the sale closed." It is said that this is the last item of property that was sold or was offered for sale, and that after what had occurred between the auctioneer and Andrews, that the sale closed.

We think this petition does not offer a contract such as a recovery should be had upon and that it is defective, notwithstanding we know the rule as to defective pleadings, where no objection is taken and the case is tried and costs incurred, we think the petition is clearly defective and should be amended in this case, and for these reasons, this case is reversed and remanded to the common pleas for further proceedings.